IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON DUNFEE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 13-165 Erie |
| | ) |
| SALLY LUND, | ) |
| | ) |
| Defendant. | ) |

## OPINION

Plaintiff Sharon Dunfee commenced this civil rights housing discrimination action against Defendant Sally Lund by way of a Complaint in Intervention on July 23, 2013. Her Intervenor Complaint followed the June 19, 2013 filing of a Complaint on Ms. Dunfee's behalf by the United States Housing and Civil Enforcement Section of the Civil Rights Division. Both Complaints are substantially similar and allege that Ms. Lund discriminated against Ms. Dunfee based on her disability by refusing to rent to her in violation of the Fair Housing Act of 1968 and the Fair Housing Amendments Act of 1988 ("FHAA").

Ms. Lund filed her Answers to the Complaints on August 26, 2013, and an Initial Case Management Conference was set for November 12, 2013. Prior to the conference the United States entered into a Settlement Agreement with Ms. Lund and thus the case proceeds only on Ms. Dunfee's Complaint in Intervention. The day before the case management conference Ms. Lund filed a Motion for Partial Summary Judgment (ECF No. 18) seeking dismissal of two of Ms. Dunfee's three counts. For the reasons set forth below, we will deny Defendant's Motion.

## I. Relevant Factual Background

From September 22, 1983 to September 17, 2009, Defendant Sally Lund and her husband David Lund (Mr. Lund passed away in 2011) owned a residence at 423 West Front Street, Erie, Pennsylvania, which they rented to tenants from time-to-time. Affidavit of Sally A. Lund, Sept. 23, 2013, ¶4. According to Ms. Lund, in the summer of 2009, she and her husband decided to sell the property and initially tried to sell the property by word of mouth. Id. ¶ 6. When the property did not sell right away, the Lunds placed the property back on the market for rental on August 7, 2009, while also still trying to sell the property. Id. ¶¶ 7-8. The Lunds placed a classified advertisement in the Erie Times-News on Friday, August 7, 2009, which was to run until August 16, 2009, advertising as a House for Rent their "Bayfront Cottage, 423 West Front St," for $500 per month. Id. ¶¶ 7-8; Ex. A, to Lund Aff.

Plaintiff Sharon Dunfee telephoned the Lunds at the telephone number indicated in the advertisement on August 7, 2009, the first day the advertisement was in the paper. Ms. Dunfee spoke with Ms. Lund. Ms. Dunfee told Ms. Lund that she could afford the required rent of $500 per month with the assistance of a Section 8 Housing Voucher. During the relevant time period, Ms. Dunfee was a participant in the Section 8 Housing Choice Voucher program, 42 U.S.C. § 1437F. Ms. Dunfee maintains that Ms. Lund communicated to her that she would accept her as a tenant with the Section 8 Voucher. Ms. Dunfee then told Ms. Lund that she had two emotional support cats, to which Ms. Lund responded by telling Ms. Dunfee that they would not accept her as a tenant because of their "no pets" policy.

As a result of Ms. Lund's refusal to rent to her because she had support animals, Ms. Dunfee sought assistance from the Director of Housing Services, Constance L. Burnett, of a disability service organization called Voices for Independence. Ms. Burnett telephoned the

2

Lunds on or about Tuesday August 11, 2009, to discuss the situation Ms. Dunfee brought to her attention. Ms. Burnett explained to either Mr. Or Ms. Lund that Ms. Dunfee has certain rights under the Fair Housing Act and that it would be a violation of the Act to deny housing to a person with a disability based on their need for a service animal. The Lunds, however, maintained their right to uphold their no pets policy and thus refused to rent the property to Ms. Dunfee.

In addition to Ms. Dunfee seeking to rent the Lunds' property, Ms. Lund indicates that she received telephone calls from several prospective tenants and that she arranged for seven or eight people to view the property on the same day. Lund Aff. ¶ 9. Ms. Lund does not indicate when she received the telephone calls or what day she scheduled the appointments with the prospective tenants, but she further indicates that on whatever day it was that she showed the property to several prospective tenants she also entered in a verbal agreement to sell the property to the neighboring property owner. Id. ¶ 10. Later that same evening that the Lunds agreed to sell the property, Ms. Lund telephoned all the people who had viewed the property that day (for whom she had a telephone number) to let them know that the property was no longer for rent as the Lunds were selling it. Id. ¶ 11. The next day, Ms. Lund telephoned the Erie Times-News to cancel the remaining days of the classified advertisement offering the property for rent. Id. The Lunds in fact did not rent the property and instead entered into a written agreement for sale of the property on August 31, 2009, and closed on the sale of the property on September 17, 2009. Id. ¶¶ 13-14.

Ms. Lund avers that the West Front Street Property was never a part of the Section 8 Housing Choice Voucher Program, that she and her husband had never rented the property to a person who had a Section 8 voucher, and that she would not have agreed to include the property in the Section 8 program. Id. ¶¶ 15-18.

On June 24, 2010, Ms. Dunfee filed a complaint with the Department of Housing and Urban Development alleging that the Lunds violated the FHA and the FHAA and discriminated against her because of her disability. As noted, the United States subsequently filed a Complaint on behalf of Ms. Dunfee followed by Ms. Dunfee's Complaint in Intervention, and the case against Ms. Lund is proceeding solely on Ms. Dunfee's Complaint in Intervention.

Ms. Dunfee sets forth three causes of action against Ms. Lund as a result of her allegedly discriminating against Ms. Dunfee based on her disability by refusing to rent to her in violation of the FHAA. Count One sets forth a claim of discrimination in refusing to rent to Ms. Dunfee based on her disability in violation of 42 U.S.C. § 3604(f)(1)(A). Count Two sets forth a claim of discrimination based on the failure to grant Ms. Dunfee the reasonable accommodation of permitting her to reside in the property with her support cats to afford her an equal opportunity to use and enjoy the property in violation of 42 U.S.C. § 3604 (f)(3)(B). Finally, Count Three sets forth a claim of disability discrimination based on Ms. Lund's discriminatory statement that she should not be so emotionally dependent upon her cats in violation of 42 U.S.C. § 3604(c).

Ms. Lund argues that summary judgment as a matter of law is appropriate on Count One and Count Two primarily based on her assertion that the West Front Street Property was never enrolled in the Section 8 voucher program and that she and her husband would never have enrolled the property in the program in order to rent to Ms. Dunfee. Accordingly, Ms. Lund argues as a matter of law that Ms. Dunfee was not qualified to rent the property. Ms. Lund also

4

argues that Ms. Dunfee cannot establish that the property remained available to rent after the Lunds rejected her. Finally, Ms. Lund argues that to require the Lund's to have enrolled the property in the Section 8 program as an accommodation for Ms. Dunfee is unreasonable as a matter of law.

## II. Standard of Review.

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, -- U.S. --, --, 134 S.Ct. 1861, 1866 (2014), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); and *citing* Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). A "'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Tolan, -- U.S. --, --, 134 S.Ct. at 1866, *quoting* Anderson, 477 U.S., at 249, 106 S.Ct. 2505.

## III. Discussion

As noted, Ms. Lund seeks summary judgment on Count One and Count Two. Initially we agree with Ms. Dunfee that Ms. Lund's argument as to Count Two should be rejected out of hand. In Count Two Ms. Dunfee alleges that Ms. Lund failed to provide her with the reasonable accommodation of permitting her two support cats to live with her in the rental property even though she had a "no pets" policy. Ms. Lund, in contrast, seeks summary judgment against a claim that Ms. Dunfee does not make: that Ms. Lund failed to accommodate Ms. Dunfee by failing to enroll the property in the Section 8 voucher program. As Ms. Lund's argument is not addressed to the actual claim made by Ms. Dunfee we will deny summary judgment as to Count

5

Two. Accordingly, the remainder of our discussion will focus on Ms. Lund's motion with respect to Count One.

Congress enacted the Fair Housing Act in 1968, making it illegal to discriminate, in housing practices, on the basis of race or national origin. See 42 U.S.C. § 3601 *et seq*. In 1988, Congress amended the Act so as to extend protection of the FHA to include people with disabilities. 42 U.S.C. § 3604(f).

In Count One, Ms. Dunfee sets forth a discrimination claim based on Ms. Lund's refusal to rent to her because she is disabled. Section 3604(f)(1)(A) provides as follows:

> **§ 3604. Discrimination on the sale or rental of housing and other prohibited practices**
>
> ... it shall be unlawful –
>
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--
>
> (A) that buyer or renter.

42 U.S.C. § 3604(f)(1)(A). The United States Court of Appeals for the Third Circuit has stated that a prima facie case of discrimination under the FHAA "consists of proof that (1) plaintiffs are in a protected class, (2) they applied for and were qualified to rent or purchase housing, (3) they were rejected, and (4) the housing opportunity remained available." Koorn v. Lacey Township, 78 Fed. Appx. 199, 207 (3d Cir.2003), citing Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032 (2d Cir.1979); see also Pondexter v. Allegheny County Housing Authority, 2012 WL 3611225, *6 (W.D.Pa. Aug. 21, 2012) & Keeney v. Kemper National Insurance Companies, 960 F.Supp. 617, 620 (E.D.N.Y. 1997).

Ms. Lund argues that Ms. Dunfee fails to set forth a prima facie case of housing discrimination because she cannot establish that she was qualified to rent the property since it was never enrolled in the Section 8 program. In addition, Ms. Lund argues that Ms. Dunfee also cannot show that the property remained available for rental after she was rejected.

### *Whether Plaintiff was "Qualified to Rent"*

Ms. Lund's first argument is a straightforward logical argument that since the property was not part of the Section 8 voucher program and since Ms. Dunfee sought to rent the property by using a Section 8 voucher, then Ms. Dunfee was not "qualified" to rent the property.

Although the issue has not been addressed by the Third Circuit Court, other circuits and district courts have interpreted the "qualification" prong of the prima facie case to mean that the renter must meet the objective criteria the landlord has communicated to potential renters. See Mancuso v. Douglas Elliman LLC, 808 F. Supp. 2d 606, 619 (S.D.N.Y 2011) ("courts have used as a starting point the applicable criteria that the owner has established regarding who is '"qualified"'"); Robinson, 610 F. 2d at 1038 (plaintiff had established that he "could afford to purchase the space sought" and therefore was "qualified").

The only objective criteria set forth by Ms. Lund was the requirement of $500 per month in rent. Ms. Dunfee applied to rent the property and stated to Ms. Lund that she would be using a Section 8 voucher to satisfy the rental requirement. Ms. Dunfee further maintains that Ms. Lund stated that she would accept the Section 8 Voucher as payment and therefore Ms. Dunfee has met the qualification requirement.

Ms. Lund provides evidence to show that the property was not part of the Section 8 housing program, but this is not the point. Had Ms. Lund advertised her property for rent with the caveat that she would not accept Section 8 vouchers, or had otherwise indicated that the
7

property was not part of the Section 8 program then it would be relevant that her property was not in fact in the Section 8 program. Alternatively, had Ms. Lund told Ms. Dunfee that she would not accept her Section 8 voucher to satisfy the rental payment then Ms. Lund would be able to establish that Ms. Dunfee was not qualified to rent the property.

Instead, the sequence of events, albeit disputed, show that Ms. Lund stated that she would accept the Section 8 voucher, but upon learning that Ms. Dunfee had emotional support cats reversed her position and refused to rent to Ms. Dunfee. As noted, Ms. Lund disputes Ms. Dunfee's contention that she told Ms. Dunfee that she would accept her Section 8 voucher as rental payment. Actually, Ms. Lund denies having a specific memory of the telephone conversation with Ms. Dunfee on August 7, 2009. With two differing versions of what occurred we have a classic credibility determination that a court is not permitted to make on a motion for summary judgment. If a fact-finder believes Ms. Lund, then Ms. Dunfee would be unable to establish that she was qualified to rent the property. However, if a fact-finder believes Ms. Dunfee, then she would be able to establish that she was qualified. Therefore, a genuine dispute of material fact exists, and we must deny summary judgment at this stage.

In her Reply Brief Ms. Lund spends a great deal of space arguing against the documentary evidence provided by Ms. Dunfee in the apparent hopes of winning her motion by excluding any evidence that there is a dispute about whether Ms. Lund agreed to accept a Section 8 voucher as payment, only to change her mind after hearing that Ms. Dunfee required support cats. If Ms. Lund is to win this argument "as a matter of law" however, then she must show that there is no genuine issue as to any material fact, which she is unable to show.

Moreover, in protecting against housing discrimination the FHA, FHAA, and case law support the proposition that a defendant cannot defeat a prima facie case by showing, after the

8

fact, that a potential applicant was not qualified. In <u>Robinson</u>, the Court noted that the "specific sequence of events leading up to the challenged decision also may shed some light on the decisionmaker's purposes" and that "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role. <u>Robinson</u>, 610 F.2d at 1038. Although Robinson, who was black, initially met the objective qualifications, when his purchase was being reviewed "the previous informal procedure was changed and a screening committee was created," which ultimately led to a rejection of his purchase of property. <u>Id.</u>

Likewise, in <u>Mancuso</u>, the Court distinguished between "post-hoc rationales concocted to cover intentional discrimination" and "objective requirements, often long-standing ones, clearly communicated to potential renters or purchasers of property that relate to that person's ability, financial or otherwise, to purchase or rent the property in question." <u>Mancuso</u>, 808 F. Supp. 2d 619.

We have previously denied a defendant's attempt to show that no FHAA violation occurred with post-hoc evidence that a disabled plaintiff was not qualified to rent because he failed to prove his credit worthiness. <u>Milan v. Pyros</u>, Civ. No. 08-320, 2008 WL 1994863, *24 (W.D.Pa. May 5, 2008). In <u>Milan</u>, the defendants relied on <u>Alexander v. Riga</u>, 208 F.3d 419 (3d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1069 (2001). The District Court in <u>Alexander</u> excluded evidence as to the plaintiffs' creditworthiness as not relevant, and the United States Court of Appeals for the Third Circuit affirmed. <u>Id.</u> 208 F.3d at 435. The defendants argued that the plaintiffs "had to show that they were fully qualified to rent the apartment ultimately." <u>Id.</u> But the Third Circuit Court disagreed and found that the plaintiffs were not required "to show that they were fully qualified to rent the apartment ultimately;" they "only needed to show that they were qualified to be applicants, to view the apartment, and be treated no differently from other

9

applicants." Id. We also took into account the "sequence of events" in Milan, noting that *after* defendants were presented with written notice that plaintiff had a service animal they tried to establish a record that would allow them to claim that plaintiff was not creditworthy. Milan, 2008 WL 1994863, *24. We concluded by noting that "[b]y that time it was too late as the case was then about Defendants' desire to unlawfully evict [plaintiff] because he had a service animal." Citation. Id.

This case is somewhat similar in that long after Ms. Lund was told that Ms. Dunfee was disabled and needed to live with her two support cats, she turned her attention to the fact that her property is not a participant in the Section 8 program as a post-hoc rationale to allow her to claim that Ms. Dunfee was not qualified to rent the property. We cannot enter judgment as a matter of law because if Ms. Dunfee's version of events is believed, a fact-finder could conclude that Ms. Lund's reliance on her nonparticipation in the Section 8 housing program is "too late" and that she in fact unlawfully refused to rent to Ms. Dunfee because of her service animals.

Based on the above discussion we find that it is premature at this stage of the pleadings to determine as a matter of law whether Ms. Dunfee was qualified to rent the property.

### *Whether the Housing Opportunity Remained Available*

Next, Ms. Lund argues that Ms. Dunfee fails to satisfy the fourth prong of the prima facie case because the Lund's sold the property after their contact with Ms. Dunfee and never rented the property to any other tenant in the interim, and therefore the property did not remain available. There is no definite amount of time that a property must stay on the market in order to satisfy the fourth prong of a prima facie case for housing discrimination. However, some courts have concluded that if the plaintiff met the objective criteria to rent while the property was available, then the plaintiff has satisfied the fourth prong. See Phiffer v. Proud Parrot Motor

10

Hotel, Inc., 648 F.2d 548 (C.A. Cal. 1980); See also Shaw v. Cassar, 558 F.Supp. 303 (D.C. Mich. 1983).

Ms. Lund relies upon cases where the plaintiff was never objectively qualified while the property was still available and therefore did not satisfy the fourth prong. See Mitchell v. Century 21 Rustic Realty. 233 F.Supp.2d 548 (C.A. Cal. 1980); See also Bell v. Mike Ford Realty Co.. 857 F.Supp. 1550 (S.D. Ala. 1994). However, if it is ultimately determined that Ms. Dunfee was "qualified" then she was qualified while the property was still available. Thus, we will deny summary judgment as to Count Two.

**IV. Conclusion.**

Depending on the testimony and evidence a fact-finder may or may not find that Ms. Lund discriminated against Ms. Dunfee on the basis of her disability. Congress has made it clear that a landlord who discriminates on the basis of disability is in violation of the law. However, here we have an elderly owner of a single rental property with a "no pets" policy, as opposed to a sophisticated corporate landlord handling multiple units and multiple properties. In addition, it is undisputed that the property at issue was sold not long after Ms. Lund rejected Ms. Dunfee, and the property was not rented to anyone else in the interim. A fact-finder will take into account that the property in fact was not a participant in Section 8, and depending on the testimony, may believe that Ms. Lund had no intention of enrolling the program in Section 8 housing and perhaps misspoke when she said she would accept Ms. Dunfee's voucher. Thus, any monetary damages suffered by Ms. Dunfee would likely be minimal.

We also note that Ms. Lund has formally agreed in her Settlement Agreement with the United States that she shall comply with the provisions of the FHA and shall not discriminate on the basis of disability as prohibited by the FHA. ECF No. 15, at ¶1. Moreover, she does not

intend to purchase or rent any dwellings, and if she changes her mind within the next two years she is required to notify the United States and thereafter undergo training on the provisions of the FHA. Id. ¶2. If she fails to comply with the terms of the Settlement Agreement the United States may reopen the case against her. Id. ¶ 5. We note these terms as they appear to indicate that any further injunctive relief sought by Ms. Dunfee would be complementary to the restrictions under which Ms. Lund is already operating. However, at this early stage of the proceedings, and due to the lack of documentary and testimonial evidence, there are genuine issues as to material facts. Accordingly, Defendant's Motion for Partial Summary Judgment as a matter of law will be denied.

An appropriate Order follows.

August 7, 2014
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.,
Senior District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON DUNFEE ) | |
| ) | |
| Plaintiff/Intervenor, ) | |
| ) | |
| v. ) | Civ. No. 13-165 Erie |
| ) | |
| SALLY LUND, ) | Judge Maurice B. Cohill |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 7th day of August, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant Sally Lund's Motion for Partial Summary Judgment (ECF No. 18) be and hereby is DENIED.

Maurice B. Cohill, Jr.
Senior District Court Judge